David Tykulsker, Esq. (2609)
David Tykulsker & Associates
161 Walnut Street
Montclair, NJ 07042
(973) 509-9292 (office)
(973) 509-1181 (fax)
david@dtesq.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MEDIEVAL TIMES U.S.A., INC.,<br><br>Plaintiff,<br><br>v.<br><br>MEDIEVAL TIMES PERFORMERS UNITED, and AMERICAN GUILD OF VARIETY ARTISTS,<br><br>Defendants. | Case No. 2:22-cv-06050 (WJM) (ESK)<br><br>Motion Return Date:<br>February 21, 2023 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ........................................................................3

I. As the alleged infringement neither occurs "in commerce" nor creates any likelihood of confusion, Plaintiff fails to allege a plausible violation of the Lanham Act. ........................................3

II. Plaintiff fails to plausibly allege that AGVA is liable for MTPU's alleged conduct. ........................................10

III. The Norris-LaGuardia Act deprives this Court of jurisdiction to provide the requested injunctive relief ........................................12

CONCLUSION ........................................................................15

# TABLE OF AUTHORITIES

**Cases** **Page**

Agilent Technologies,
2005 NLRB GCM LEXIS 41 (NLRB G.C. Aug. 16, 2005) ............................8, 9

Allstate Ins. Co.,
332 NLRB 759 (2000) ....................................................................................14

Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi.,
856 F. Supp. 472 (N.D. Ill. 1994) ...................................................................4, 5

Burlington N. R.R. v. Bhd. of Maint. of Way Emps.,
481 U.S. 429 (1987)........................................................................................15

Care One Mgmt. LLC v. United Healthcare Workers E.,
43 F.4th 126 (3d Cir. 2022) .........................................................................10, 11

Cellco Partnership v. Communication Workers of America,
2003 U.S. Dist. LEXIS 26823 (D.N.J. Dec. 11, 2003).........................................3

Cintas Corp. v. UNITE HERE,
601 F. Supp. 2d 571 (S.D.N.Y. 2009),
aff'd, 355 F. App'x 508 (2d Cir. 2009) ...........................................................3, 4

Douglas v. Osteen,
560 F. Supp. 2d 362 (E.D. Pa. 2008)..................................................................6

Food Sciences Corp. v. Nagler,
2010 U.S. Dist. LEXIS 112072 (D.N.J. Oct. 20, 2010) .......................................6

Giant Food LLC,
2012 NLRB LEXIS 896 (NLRB G.C. March 21, 2012).......................................9

Interpace Corp. v. Lapp, Inc.,
721 F.2d 460 (3d Cir. 1983) ..............................................................................6

J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC,
2007 U.S. Dist. LEXIS 288 (E.D. Pa. Jan. 4, 2007) ...........................................6

Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,
65 F. App'x 803 (3d Cir. 2003) .......... 11-12

Marriott Corp. v. Great America Services Trades Council, AFL-CIO,
552 F.2d 176 (7th Cir. 1976) .......... 13

Parker v. Google, Inc.,
422 F. Supp. 2d 492 (E.D. Pa. 2006) .......... 7

Senco Prods. v. Int'l Union of Elec., Radio & Machine Workers,
311 F. Supp. 590 (S.D. Ohio 1970) .......... 5

Silgan Containers LLC v. Int'l Ass'n of Machinists & Aero. Workers,
2018 U.S. Dist. LEXIS 191308 (E.D. Wis. Nov. 8, 2018) .......... 3, 4, 5, 13

United Mine Workers v. Gibbs,
383 U.S. 715 (1966) .......... 11

WHS Ent. Ventures v. United Paperworkers Int'l Union,
997 F. Supp. 946 (M.D. Tenn. 1998) .......... 3

William Morris Endeavor Entm't, LLC v. Writers Guild of Am., W., Inc.,
2020 U.S. Dist. LEXIS 247744 (C.D. Cal. Dec. 30, 2020) .......... 14-15

Wilson & Co. v. Birl,
105 F.2d 948 (3d Cir. 1939) .......... 14

World Wrestling Fed'n Entm't, Inc. v. Big Dog Holdings, Inc.,
280 F. Supp. 2d 413 (W.D. Pa. 2003) .......... 6-7

**Statutes**

National Labor Relations Act
29 U.S.C. § 158(a)(2) .......... 9

Norris-LaGuardia Act
29 U.S.C. § 101 .......... 12, 13
29 U.S.C. § 106 .......... 11

Defendants American Guild of Variety Artists ("AGVA") and Medieval Times Performers United ("MTPU") (collectively, "Defendants") submit this memorandum of law in further support of their motion to dismiss the Complaint ("Compl.") of Plaintiff Medieval Times U.S.A., Inc. ("Plaintiff" or "Medieval Times") under Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

As explained in Defendants' moving brief, courts have routinely dismissed employers' Lanham Act claims against labor unions and denied requests for injunctions in circumstances remarkably similar to those here, concluding that there is no likelihood of confusion and/or no use in commerce where a union uses an employer's trademark to refer to the employer. Plaintiff primarily argues that the instant case is different because MTPU has allegedly used the "Medieval Times" name as part of MTPU's own name on the union's website and social media pages. But as will be explained below, the caselaw makes clear that this does not change the outcome of the analysis — a labor union does not violate the Lanham Act by referring to an employer's name, including in the name of the union itself.

In addition to the insufficiency of Plaintiff's pleadings as a matter of law, Plaintiff's arguments also fail to grasp the nuances of how social media and websites have changed the communication of labor disputes. The courts and the

National Labor Relations Board ("NLRB") have long recognized that workers have a right to draw public attention to their organizing efforts through handbills, banners, and other means of communication. Workers can also prominently use their employer's trademarked name in these communications — indeed, it would be impossible for these communications to be effective without prominently naming the workers' employer. But while a union does not need to create a "name" for itself to publicly display a banner or distribute handbills, a union must adopt a name or title for its website or social media account. And just as it is lawful for a union to include an employer's trademarked name in the most prominent text of a handbill or a banner, it would be absurd to prohibit a union from including an employer's name in the most prominent aspect of the union's social media account or website, as Plaintiff asks the Court to do here.

Plaintiff's further arguments are also unavailing. Its attempt to salvage its allegations against AGVA starts with a mischaracterization of the appropriate liability standard and ends with merely reiterating the Complaint's threadbare and conclusory allegations. Most notably, Plaintiff does not dispute Defendants' contention that the Complaint fails to allege that the individuals allegedly responsible for the use of the mark are even members of AGVA. Finally, Plaintiff's argument that injunctive relief is appropriate is plainly contrary to the Norris-LaGuardia Act ("NLGA") and the relevant caselaw.

## ARGUMENT

### I. As the alleged infringement neither occurs "in commerce" nor creates any likelihood of confusion, Plaintiff fails to allege a plausible violation of the Lanham Act.

As explained in Defendants' moving brief, courts have routinely dismissed employers' trademark claims against unions in similar circumstances to the present case. See Cellco Partnership v. Communication Workers of America, 2003 U.S. Dist. LEXIS 26823, at *25 (D.N.J. Dec. 11, 2003); Silgan Containers LLC v. Int'l Ass'n of Machinists & Aero. Workers, 2018 U.S. Dist. LEXIS 191308, at *9 (E.D. Wis. Nov. 8, 2018); Cintas Corp. v. UNITE HERE, 601 F. Supp. 2d 571, 579 (S.D.N.Y. 2009), aff'd, 355 F. App'x 508 (2d Cir. 2009); WHS Ent. Ventures v. United Paperworkers Int'l Union, 997 F. Supp. 946, 953 (M.D. Tenn. 1998)). Plaintiff urges that the distinguishing feature of this case is that MTPU allegedly uses Plaintiff's entire mark "as part of its own name." (See, e.g., Pl. Br. at 13.) But Plaintiff's argument is unavailing, as the same or similar conduct was alleged in some of the above-cited cases as well.

In Silgan, the allegations were essentially the same as those alleged here. The plaintiff employer alleged that it owned federal trademark registrations for the SILGAN mark. 2018 U.S. Dist. LEXIS 191308, at *2. Screenshots attached to the complaint reflected that the union's Facebook handle was @IAMSilgan, and the name of the union's Facebook page was "IAM Silgan." Id. Similarly, the union's

Twitter handle was @IAM_Silgan, and the name of the Twitter page was "IAM Silgan." Id.[1] Despite the union's use of the employer's entire mark in the names and handles of the union's social media pages, the court nonetheless concluded: "IAM is not using the SILGAN trademark as a source identifier for its services or to sow confusion as to whether Silgan approves or is affiliated with IAM's efforts, but rather to identify Silgan as the employer of the employees IAM is attempting to unionize." Id. at *9. Plaintiff's claims here must be dismissed for the same reason.

Similarly, in Cintas, the plaintiff employer alleged that it owned trademark registrations for the CINTAS mark. 601 F. Supp. 2d at 574. The defendant union operated a website titled "Cintas Exposed" at cintasexposed.org. Id. at 575. Despite the union's use of the employer's mark in the website title and address, the court concluded that "[t]he likelihood of confusion among consumers visiting their websites is implausible," and granted the union's motion to dismiss Cintas's trademark infringement and unfair competition claims. Id. at 581.

Plaintiff argues that the facts here are "more aligned with" Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi., 856 F. Supp. 472, 475 (N.D. Ill. 1994), but that case does not help Plaintiff. As Medieval Times misleadingly

---

[1] Although not referenced in the Silgan court's decision granting the union's motion to dismiss, the screenshots included with the complaint showed that the union's Facebook page also linked to a website at the domain IAMSilgan.com. Silgan, No. 1:18-cv-00213-WCG, ECF No. 3-4 at 2, 3 (E.D. Wis. Feb. 9, 2018).

describes it, the Brach court "enjoined employees who adopted their employer's 'BRACH' name and logo to identify their new association formed to lobby against their employer." (Pl. Br. at 13.) While the association did use the Brach's name and logo to identify the association, the court only "enjoin[ed] the defendant from using the Brach's logos . . . or any counterfeit or colorable imitation thereof." 856 F. Supp. at 477 (emphasis added). The court specifically stated: "This injunction does not prohibit the defendant from using the word 'Brach's.'" Id. Here, unlike the plaintiffs in Brach, Medieval Times has not alleged that Defendants use Plaintiff's logo or any imitation thereof. Rather, Plaintiff asks the Court to restrict Defendants' use of Plaintiff's name. But Brach and other courts have rejected such restrictions on a union's use of an employer's trademarked name. See Silgan, 2018 U.S. Dist. LEXIS 191308, at *9 ("IAM is not using the SILGAN trademark as a source identifier for its services or to sow confusion as to whether Silgan approves or is affiliated with IAM's efforts, but rather to identify Silgan as the employer of the employees IAM is attempting to unionize."); Senco Prods. v. Int'l Union of Elec., Radio & Machine Workers, 311 F. Supp. 590, 592 (S.D. Ohio 1970) ("It would be difficult for a union, giving the publicity that is specifically protected by the [National Labor Relations] Act, to aught but name the employer.").

Plaintiff also argues that because likelihood of confusion is a "fact-bound inquiry," courts "often" reject arguments that a trademark claim should be

dismissed based on a failure to plausibly allege likelihood of confusion. (Pl. Br. at 16.) But as the court explained in Food Sciences Corp. v. Nagler, 2010 U.S. Dist. LEXIS 112072 (D.N.J. Oct. 20, 2010):

> Likelihood of confusion is an issue well-suited for screening at the motion to dismiss stage. This is not an area of law in which plaintiffs face information asymmetries such that even viable claims will be lacking in critical information before discovery. On the contrary, by its nature, a trademark claim turns on facts known to a plaintiff because it requires a showing that the public is likely to be deceived by the public conduct of the defendant toward the plaintiff's own mark.

Id. at *8; see also Douglas v. Osteen, 560 F. Supp. 2d 362, 369 (E.D. Pa. 2008) (dismissing trademark claim because, inter alia, "Plaintiff has failed to allege any likelihood of confusion"); J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC, 2007 U.S. Dist. LEXIS 288, at *24 (E.D. Pa. Jan. 4, 2007) (dismissing trademark claim "[b]ecause no reasonable factfinder could find a likelihood of confusion under the set of facts alleged by plaintiff").

Plaintiff next argues that some of the likelihood of confusion factors set forth in Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983), favor Plaintiff. (Pl. Br. at 16-19.) Plaintiff argues that the first Lapp factor (similarity of the marks) favors Medieval Times because of the "high degree of similarity" between Plaintiff's mark and Defendants' alleged use of Plaintiff's mark. (Pl. Br. at 16.) "The Court, however, cannot look at the individual marks and design marks as they stand, but must consider the overall impression." World Wrestling Fed'n

Entm't, Inc. v. Big Dog Holdings, Inc., 280 F. Supp. 2d 413, 432 (W.D. Pa. 2003). Here, MTPU's name makes clear that it consists of Medieval Times performers—which it does—and that the performers are uniting.[2] The overall impression, particularly when considering the other content alleged to be on the website and in the social media posts—does not suggest any endorsement by Plaintiff. Indeed, it shows that MTPU is critical of Plaintiff, which makes confusion unlikely. See Parker v. Google, Inc., 422 F. Supp. 2d 492, 502 (E.D. Pa. 2006) ("[I]t is difficult to accept the possibility that someone would believe that [plaintiff] himself created a website that refers to him so negatively. We see no likelihood of confusion.").

---

[2] In a footnote, Plaintiff contends that "several third-party performers and other artist groups use the name 'United' none of which are unions." (Pl. Br. at 19 n.2.) Plaintiff's contention and the cited websites should be disregarded because they were not contained in the Complaint. But to the extent the Court considers Plaintiff's contention, it must be noted that numerous unions use the word "united" in their name. See Dave Jamieson, Medieval Times Sues Its Workers' Union Alleging 'Trademark Infringement', Huffington Post, https://www.huffpost.com/entry/medieval-times-sues-union-trademark_n_63485fa5e4b0b7f89f54546b (Oct. 13, 2022) ("Many workers have been organizing new unions lately under a variation of the "united" theme. Some examples are Starbucks Workers United, Trader Joe's United and Home Depot Workers United."). Indeed, Plaintiff's counsel is well-aware of this trend, as demonstrated by a post on its own website promoting its work in the instant case: "The arguments and outcome of this case hold particular significance as high-profile unionization campaigns like Starbucks Workers United and the Amazon Labor Union maintain organizing efforts that bear company names." Stevens & Lee, Stevens & Lee's Labor and IP Team Lead Notable Union Trademark Infringement Case, https://www.stevenslee.com/news/stevens-lees-labor-and-ip-team-lead-notable-union-trademark-infringement-case/ (Oct. 14, 2022) (emphasis added). It is unfortunate that Plaintiff's counsel is more forthcoming in its promotional materials than it is with the Court.

Plaintiff further asserts that the fifth Lapp factor (evidence of bad faith intent) favors Plaintiff. (Pl. Br. at 18.) Contrary to Plaintiff's assertion, Plaintiff has not plausibly alleged any bad faith intent by Defendants. Plaintiff claims that Defendants "listed on MTPU's website *Plaintiff's* Lyndhurst and Buena Park locations as *their own*." (Pl. Br. at 18). But the text allegedly on MTPU's website, which refers to "our union at the castle in Lyndhurst, NJ" and "our union at the castle in Buena Park, CA," only ascribes the union, not the castle, to MTPU. (Pl. Br. at 18; Compl. ¶ 37.) Plaintiff's entire premise that Defendants want to confuse the public into thinking Defendants are endorsed by Plaintiff is baffling. While there has been no discovery and Defendants are thus limited to the allegations in the Complaint, screenshots in the Complaint reflect that MTPU criticizes the lack of safety and fairness in the workplace at Medieval Times, and that Defendants repeatedly refer to themselves as unions. (Compl. ¶¶ 37, 40.)

In an attempt to bolster its likelihood of confusion argument, Plaintiff points to an Advice Memorandum from the NLRB Office of the General Counsel in Agilent Technologies, 2005 NLRB GCM LEXIS 41 (NLRB G.C. Aug. 16, 2005). In that case, an employer disciplined an employee for using the employer's trademarked name and logo on a union website. Id. at *1. The Memorandum states that the use of the employer's trademark on the union website "might suggest Employer assistance, sponsorship or promotion of [the employee's] Union

activities and could possibly run afoul of [National Labor Relations Act ("NLRA")] Section 8(a)(2)," id. at *3 (emphasis added), which makes it unlawful for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it," 29 U.S.C. § 158(a)(2). Notably, there was no finding of a violation of Section 8(a)(2) in Agilent, and neither the Agilent Memorandum nor Plaintiff's brief cite to any cases where the NLRB has actually held that an employer's failure to act to stop a union from using the employer's trademark was evidence that the employer had violated Section 8(a)(2) of the Act.

But even more importantly, a more recent Advice Memorandum concluded that although an employer "has a proprietary interest in its trademarks, including its logo if trademarked, employees' use of its name, logo, or other trademark while engaging in [activity protected by Section 7 of the NLRA] would not infringe on that interest." Giant Food LLC, 2012 NLRB LEXIS 896, at *25 (NLRB G.C. March 21, 2012). The Advice Memorandum in Giant Food explained:

> Courts have identified three interests that are protected by the trademark laws: (1) the trademark holder's interest in protecting the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise sold by another entity using the trademark; (2) the trademark holder's interest in being able to enter a related commercial field at some future time and use its well-established trademark; and (3) the public's interest in not being misled as to the source of products offered for sale using confusingly similar marks. These interests are not remotely implicated by employees' non-commercial use of a name, logo, or other trademark to identify the

> Employer in the course of engaging in Section 7 activity related to their working conditions.

Id. (emphasis added). In light of this more recent and more thorough analysis by the NLRB Office of the General Counsel, and in the absence of contrary Board precedent, Plaintiff's purported concern that MTPU's alleged use of Plaintiff's mark could create liability for Plaintiff under the NLRA is specious at best.

## II. Plaintiff fails to plausibly allege that AGVA is liable for MTPU's alleged conduct.

Plaintiff's threadbare and conclusory allegations fail to plausibly show that it will be able to satisfy the heightened standard required to hold a union liable for its members' actions pursuant to Care One Management LLC v. United Healthcare Workers East, 43 F.4th 126 (3d Cir. 2022). As explained in Defendants' moving brief, Care One holds that "a labor union cannot be held liable for the actions of its members (even if those members are officers of the union) absent 'clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.'" Id. at 140. Plaintiff has failed to plausibly allege facts showing that AGVA is liable for MTPU's alleged conduct.

Plaintiff's assertion that the liability standard set forth in Care One "only applies to RICO violations for mail and wire fraud and extortion," (Pl. Br. at 23), is patently false. After setting forth the heightened standard in Care One, the Third Circuit stated: "It is therefore now beyond contention that common-law principles

of agency and *respondeat superior* have no place in assessing liability of labor unions for the acts of their members or officers for claims (such as the ones before us) not falling under the LMRA [Labor Management Relations Act]." 43 F.4th at 141. Thus, while Care One involved allegations of federal RICO violations and state extortion claims, these are only examples of the many claims "not falling under the LMRA" to which the heightened standard applies. See id.

Further, the Third Circuit did not pull this heightened standard out of thin air. Rather, as the Third Circuit explained, see 43 F.4th at 139-41, the standard comes from Section 6 of the NLGA, which provides:

> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

29 U.S.C. § 106. Notably, the Supreme Court has held that the Section 6 liability standard is broadly "applicable to cases not arising under the [LMRA]," even including "state tort claims arising out of labor disputes." United Mine Workers v. Gibbs, 383 U.S. 715, 736-37 (1966). Thus, it is clear that the NLGA standard for union liability, as applied by the Third Circuit in Care One, is the appropriate standard for the Court to apply here.

Next, Plaintiff concedes that it must "allege facts sufficient to allow [an agency] relationship to be proven at trial," (Pl. Br. at 25 (quoting Jurimex

Kommerz Transit G.M.B.H. v. Case Corp., 65 F. App'x 803, 808 (3d Cir. 2003)), but the remainder of Plaintiff's argument does little more than reiterate the conclusory and threadbare agency allegations from its Complaint. (Pl. Br. at 23-25.) Plaintiff continues to misconstrue alleged statements that MTPU is "represented by" AGVA as supporting Plaintiff's claim that MTPU is an agent of AGVA, rather than vice-versa. (Pl. Br. at 24.) And Plaintiff's continued reliance on its allegation that AGVA "shares news updates regarding MTPU" on the AGVA website only highlights the lack of plausibility of Plaintiff's agency argument. (Pl. Br. at 25.) Most notably, Plaintiff does not dispute Defendants' contention that the Complaint "fails to allege that the individuals allegedly responsible for the use of the mark are even members of AGVA." (See ECF 11-2, at 13-14 n.4.) As Plaintiff has failed to allege facts sufficient to show a plausible connection between AGVA and the alleged wrongful conduct, Plaintiff's claims must also be dismissed as against AGVA on this basis.

## III. The Norris-LaGuardia Act deprives this Court of jurisdiction to provide the requested injunctive relief.

Because this case grows out of a labor dispute, the NLGA deprives this Court of jurisdiction to grant injunctive relief. See 29 U.S.C. § 101 ("No court of the United States, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this Act . . . .").

Plaintiff's first argument to evade this outcome — that a request for injunctive relief cannot be disposed of under Rule 12(b)(6), (Pl. Br. at 26-27) — is contrary to Silgan. As described above, the plaintiff employer in Silgan alleged that the defendant union violated the Lanham Act by using the employer's name in the names and handles of the union's social media pages. 2018 U.S. Dist. LEXIS 191308, at *1. The employer sought a permanent injunction and damages, and the union moved to dismiss the complaint pursuant to Rule 12(b)(6). Id. at *1-2. The court held, while granting the union's motion to dismiss, that "this court does not have subject matter jurisdiction over [the plaintiff's] prayer for injunctive relief." Id. at *7. The Court should reach the same conclusion here.

Next, the NLGA prohibits an injunction here because this case grows out of a labor dispute. See 29 U.S.C. § 101. Plaintiff's argument to the contrary is that MTPU allegedly uses Plaintiff's mark in MTPU's name, rather than "in the content of" communications. (Pl. Br. at 28.) But this was also the case with the union in Marriott Corp. v. Great America Services Trades Council, 552 F.2d 176 (7th Cir. 1976), where the Seventh Circuit found that the NLGA prohibited enjoining the union's use of the employer's trademark in its name. Although Plaintiff points out that the union in Marriott only used "Great America" in its name, rather than the entire "Marriott Great America" mark, (Pl. Br. at 36), that is a distinction without a difference as to whether the case grew out of a labor dispute.

Plaintiff attempts to downplay the drastic scope of the remedy it seeks by claiming in its brief that "Defendants can proceed, under *any other* non-infringing name, to associate without any interference, restraint, or coercion by Medieval Times." (Pl. Br. at 31.) But this is belied by the Complaint, which alleges as "Wrongful Acts" that the MTPU website referenced Medieval Times locations and included pictures of MTPU members while at work. (Compl. ¶¶ 37, 38.) It is clear that Plaintiff seeks to interfere with and restrain Defendants' associational activities to a far greater extent than "merely" requiring MTPU to change its name. Plaintiff's requested injunction would restrict employees' rights to refer to their employer and discuss their working conditions, which is contrary to public policy as set forth in any number of NLRB cases. See, e.g., Allstate Ins. Co., 332 NLRB 759, 759, 765 (2000) (employer violated NLRA by disciplining employee who gave an interview to a magazine discussing working conditions).

Finally, Plaintiff will not be able to satisfy the requirements for an injunction under NLGA Section 107. Most notably, the "unlawful acts" required under Section 107 "do not constitute a general reference to anything that may be considered illegal, but specifically to the acts of violence which the authority of the executive is calculated to control." Wilson & Co. v. Birl, 105 F.2d 948, 952 (3d Cir. 1939); William Morris Endeavor Entm't, LLC v. Writers Guild of Am., W., Inc., 2020 U.S. Dist. LEXIS 247744, at *14-15 (C.D. Cal. Dec. 30, 2020) ("[T]he

[NLGA's] injunctive powers are narrowly limited to 'violence, intimidation, threats, vandalism, breach of peace and criminal acts,' not monetary and/or relational damages . . . ."). There are no such allegations here. As the Supreme Court has stated, "the [NLGA's] ban on federal injunctions is not lifted because the conduct of the union is unlawful under some other, nonlabor statute." Burlington N. R.R. v. Bhd. of Maint. of Way Emps., 481 U.S. 429, 435 n.3 (1987).

## CONCLUSION

The Complaint should be dismissed. If any part of the Complaint remains, AGVA should be dismissed and injunctive relief should be denied.

Respectfully submitted,

Dated: February 14, 2023

/s/ David Tykulsker

David Tykulsker
David Tykulsker & Associates
161 Walnut Street
Montclair, NJ 07042
(973) 509-9292
(973) 509-1181 (Fax)
david@dtesq.com

Eric R. Greene (*pro hac vice*)
Nicholas J. Johnson (*pro hac vice*)
Spivak Lipton LLP
1040 Avenue of the Americas, 20th Floor
New York, NY 10018
(212) 765-2100
(212) 765-8954 (fax)
egreene@spivaklipton.com
njohnson@spivaklipton.com

*Attorneys for Defendants*